UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDA PELOQUIN, et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>TESLA, INC.,<br><br>　　　　　Defendant. | Case No.  25-cv-06690-AMO<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION**<br><br>Re: Dkt. No. 25 |

This is an employment discrimination action brought under California's Fair Employment and Housing Act ("FEHA").  Defendant Tesla, Inc.'s ("Tesla") motion to compel arbitration and stay proceedings was heard before this Court on February 12, 2026.  The Court requested further briefing from the parties, which they submitted on February 20, 2026.  Having read all the parties' papers and carefully considered their arguments therein and those made at the hearing, as well as the relevant legal authority, the Court hereby GRANTS the motion to compel arbitration for the following reasons.

## I.    BACKGROUND

On August 23, 2018, Tesla hired Plaintiff Ozell Murray as a Production Specialist with the physical security team at its Fremont facility in California.  *See* Dkt. No. 25-1 (offer letter). As a Production Specialist, Murray was responsible for ensuring safety and order at the Fremont facility. (Amended Complaint).  First Am. Compl. (Dkt. No. 15, "FAC") ¶ 174.

Murray received an offer letter at the beginning of his employment.  The offer letter provided in relevant part:

> [T]o ensure the rapid and economical resolution of disputes that may arise in connection with your employment with Tesla, you and Tesla agree that any and all disputes, claims, or causes of action, in law or

equity, arising from or relating to your employment, or the termination of your employment, will be resolved, to the fullest extent permitted by law by final, binding and confidential arbitration in your city and state of employment conducted by the Judicial Arbitration and Mediation Services/Endispute, Inc. ("JAMS"), or its successors, under the then current rules of JAMS for employment disputes.

Dkt. No. 25-1 at 3-4.

On August 7, 2025, Plaintiffs Ozell Murray, Sharnique Martin, Linda Peloquin, Tiara Paulino, Adam Chow, and Gregory Vass together filed this lawsuit. Dkt. No. 1. On October 17, 2025, the Plaintiffs filed an Amended Complaint. Dkt. No. 15. Plaintiffs assert claims for retaliation under Cal. Gov. Code § 12940(h) and Cal. Labor Code § 1102.5(b), hostile work environment under Cal. Gov. Code § 12940(j), race discrimination under Cal. Gov. Code § 12940(a), disability discrimination under Cal. Gov. Code § 12940(a), (h), (j), failure to prevent unlawful discrimination, harassment, and retaliation under Cal. Gov. Code § 12940(k), failure to engage in the interactive process under Cal. Gov. Code § 12940(n), failure to accommodate under Cal. Gov. Code § 12940(m), wrongful termination in violation of public policy, and constructive termination in violation of public policy. *See generally* FAC.

On October 29, 2025, all Plaintiffs except for Murray agreed to submit their claims to arbitration. *See* Dkt. Nos. 16 & 17.

## II.    DISCUSSION

Tesla moves to compel Murray's claims to arbitration. The Court first considers Tesla's request for judicial notice before turning to the merits of the motion.

### A.    Request for Judicial Notice

Federal Rule of Evidence 201 provides that a federal court "may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). This includes "undisputed matters of public record . . . [such as] documents on file in federal or state courts." *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (citations omitted). However, a court may not take judicial notice of any disputed facts, even if stated in those same public records. *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001).

Here, Tesla seeks judicial notice of 42 orders issued by state and federal courts granting or affirming decisions to grant motions to compel filed by Tesla in other cases. *See* Dkt. No. 26. Murray does not oppose this request. *See generally* Dkt. No. 31. As court records, these orders are proper subjects of judicial notice. In addition, Tesla seeks judicial notice of the current Judicial Arbitration and Mediation Services/Endispute, Inc. ("JAMS") Employment Arbitration Rules & Procedures. *See* Dkt. No. 50. They are an undisputed matter of public record. The Court therefore grants Tesla's request for judicial notice as unopposed.

### B.    Motion to Compel Arbitration

Tesla moves to compel Murray's claims to arbitration and to stay the case. Dkt. No. 25. The Federal Arbitration Act ("FAA") provides that written arbitration agreements in contracts "evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting 9 U.S.C. § 2). The FAA reflects a "liberal federal policy favoring arbitration agreements." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991) (quoting *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24 (1983)). The FAA "mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985). However, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 83 (2002). Where a valid agreement to arbitrate exists and encompasses the dispute at issue, "then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." *Chiron Corp. v. Ortho Diagnostic Systems, Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (internal citations omitted).

When evaluating whether a party is bound by an arbitration agreement, federal courts " 'apply ordinary state-law principles that govern the formation of contracts' to decide whether an agreement to arbitrate exists." *Norcia v. Samsung Telecomms. Am., LLC,* 845 F.3d 1279, 1283 (9th Cir. 2017) (quoting *First Options of Chi. Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)); *see also Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002) (noting that although the

3

FAA preempts state laws that are only applicable to arbitration agreements, general contract principles and defenses "grounded in state contract law, may operate to invalidate arbitration agreements") (citing *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).  To form a contract under California law, there must be "actual or constructive notice of the agreement" and a "manifest[ation of] mutual assent."  *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 512-13 (9th Cir. 2023).  If the foundational elements are satisfied, the agreement shall be enforced so long as it is fair and conscionable.  The plaintiff bears the burden of showing that an arbitration agreement is unconscionable.  *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1260 (9th Cir. 2017); *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 972 (1997) ("a party opposing the petition [to compel arbitration] bears the burden of proving by a preponderance of the evidence any fact necessary to its defense").

Murray does not dispute that he signed the Offer Letter containing the arbitration provision, nor does he contest that the offer letter contained an arbitration provision and that his claims are encompassed within the scope of the arbitration agreement.  Instead, Murray argues that the arbitration agreement is unconscionable and, therefore, unenforceable.  Additionally, Murray contends that the agreement is unenforceable as against public policy.  The Court considers Murray's unconscionability arguments before turning to his latter argument.

### 1.    Unconscionability

"It is well-established that unconscionability is a generally applicable contract defense, which may render an arbitration provision unenforceable."  *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1280 (9th Cir. 2006).  Under California law, a court may refuse to enforce a provision when it is procedurally and substantively unconscionable.  *Id.* at 1280.  Although both forms of unconscionability must be present, "they need not be present in the same degree."  *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 910 (2015) (citation omitted).  The two forms of unconscionability operate on a "sliding scale."  *Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal. 4th 83, 114 (2000).  "[T]he more substantively oppressive a contract term, the less procedurally unconscionable it must be to be deemed unenforceable, and vice versa."  *Id.* at 114.  "[T]he party opposing arbitration bears the burden of proving any defense, such as

4

unconscionability." *Luong v. Sper Micro Computer, Inc.*, No. 24-CV-02440-BLF, 2024 WL 4681605, at *3 (N.D. Cal. Nov. 4, 2024).

The Court first determines whether Murray has established procedural unconscionability before considering whether he has shown substantive unconscionability.

<b>a.      Procedural Unconscionability</b>

Procedural unconscionability exists where there is "oppression or surprise due to unequal bargaining power." *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 1000 (9th Cir. 2021) (quoting *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt Dev., LLC*, 55 Cal. 4th 223, 236 (2012)). "Oppression" concerns "an inequality of bargaining power that results in no real negotiation and an absence of meaningful choice." *Lim*, 8 F.4th at 1000 (quoting *Poublon*, 846 F.3d at 1260). California law provides that oppression may be established by showing that an agreement was a contract of adhesion, *Lim*, 8 F.4th at 923, which is a contract "imposed and drafted by the party of superior bargaining strength, relegat[ing] to the subscribing party only the opportunity to adhere to the contract or reject it," *Poublon*, 846 F.3d at 1260 (quoting *Armendariz*, 24 Cal. 4th at 113); *see also OTO, LLC v. Kho*, 8 Cal. 5th 111, 126 (2019) ("An adhesive contract is standardized, generally on a preprinted form, and offered by the party with superior bargaining power on a take-it-or-leave-it basis." (quotation marks and citations omitted)). "Ordinary contracts of adhesion, although they are indispensable facts of modern life that are generally enforced, contain a degree of procedural unconscionability even without any notable surprises, and bear within them the clear danger of oppression and overreaching." *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1244 (2016) (quotation marks and citation omitted).

Tesla does not dispute that the arbitration agreement is a contract of adhesion but argues there is no other evidence of oppression or surprise. *See* Dkt. No. 40 at 3-4. "If the contract is adhesive, the court must then determine whether other factors are present which, under established legal rules – legislative or judicial – operate to render it [unenforceable]." *Armendariz*, 24 Cal. 4th at 113 (alteration in original) (quotations and citation omitted). Such factors that may establish oppression include:

*United States District Court*
*Northern District of California*

> (1) the amount of time the party is given to consider the proposed contract; (2) the amount and type of pressure exerted on the party to sign the proposed contract; (3) the length of the proposed contract and the length and complexity of the challenged provision; (4) the education and experience of the party; and (5) whether the party's review of the proposed contract was aided by an attorney.

*OTO*, 8 Cal. 5th at 126-27 (citation omitted).  California courts have consistently held that the fact that an arbitration agreement is an adhesion contract does not render it automatically unenforceable as unconscionable.  *See, e.g.*, *Sanchez v. Carmax Auto Superstores Calif., LLC*, 224 Cal. App. 4th 398, 402 (2014) ("[T]hat the agreement is required does not make it unenforceable, absent other factors."); *Lagatree v. Luce, Forward, Hamilton & Scripps*, 74 Cal. App. 4th 1105, 1127 (1999) ("[T]he cases uniformly agree that a compulsory predispute arbitration agreement is not rendered unenforceable just because it is required as a condition of employment or offered on a 'take it or leave it' basis.").  In fact, where the arbitration provisions presented in a contract of adhesion are highlighted for the employee, any procedural unconscionability is "limited."  *Serafin v. Balco Props. Ltd., LLC*, 235 Cal. App. 4th 165, 179 (2015).

Murray contends that his arbitration agreement is procedurally unconscionable because (1) it was a contract of adhesion – acceptance of the agreement was a condition of employment, (2) the agreement was offered without opportunity for negotiation or modification in the context of unequal bargaining power, (3) he did not have the opportunity to understand it and because he felt economic pressure to accept it, and (4) the arbitration provision was "buried in text and legal language."  Dkt. No. 31 at 13-14.

To the extent Murray advances that the arbitration agreement was the result of oppression, his arguments fail.  The offer letter is four pages long, and Murray points to no evidence that Tesla exerted pressure on him, denied him sufficient time to consider the contract, or deprived him of the opportunity to review the contract with an attorney.  These factors weigh against a finding of oppression.  *See Collins v. Virtela Tech. Servs., Inc.*, No. C 12-613 CW, 2012 WL 4466551, at *14 (N.D. Cal. Sept. 26, 2012) (finding arbitration agreement enforceable where there was "no evidence that Plaintiff was subject to significant external pressure driving him to sign the documents without taking time to review them or have someone else review them").  Indeed, other courts to consider nearly identical circumstances, including a nearly identical offer letter and

6

arbitration agreement, have held that such arguments of oppression fall short of establishing the oppression necessary for procedural unconscionability. *See Chee v. Tesla, Inc.*, 732 F. Supp. 3d 1056, 1064 (N.D. Cal. 2024); *Ly v. Tesla, Inc.*, 757 F. Supp. 3d 1033, 1043-45 (N.D. Cal. 2024). Finally, Murray's contention that he lacked a meaningful opportunity to understand and assess the arbitration agreement fails because it is well established that the failure to read or understand an arbitration clause does not preclude its enforcement. *See, e.g.*, *Harris v. TAP Worldwide, LLC*, 248 Cal. App. 4th 373, 383 (2016) ("The fact that defendant either chose not to read or take the time to understand these provisions is legally irrelevant."); *Pinnacle Museum Tower Ass'n*, 55 Cal. 4th 223, 226 (2012) ("An arbitration clause within a contract may be binding on a party even if the party never actually read the clause."). Murray fails to establish oppression that would support a finding of procedural unconscionability, so the Court turns to whether he establishes surprise.

"Surprise involves the extent to which the contract clearly discloses its terms as well as the reasonable expectations of the weaker party." *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 922 (9th Cir. 2013) (citations omitted). "An agreement may thwart understanding by hiding the challenged provision, or by using language – for example, complex statements filled with legal jargon – rendering the substance of the challenged provision opaque." *Long Beach Unified Sch. Dist. v. Margaret Williams, LLC*, 43 Cal. App. 5th 87, 104 (2019).

Murray asserts that there was surprise because the arbitration agreement was purportedly "buried" in the offer letter without any bold text or heading to signify its existence. Dkt. No. 31 at 7. The Court disagrees. The arbitration agreement was not buried in a voluminous contract or otherwise hidden. As noted above, it appears on pages two and three of a four-page offer letter, in the same, standard-sized text, with bold and italic formatting emphasizing the words "final, binding and confidential arbitration." *See* Dkt. No. 25-1 at 3-4. The inclusion of the arbitration provision in standard format in a relatively brief offer letter does not support procedural unconscionability. *See Chee*, 732 F. Supp. 3d at 1063-64 (finding arbitration provision contained in a nearly identical four-page offer letter was not "buried"). The Court concludes that there was nothing "surprising" about the arbitration agreement.

Accordingly, the Court finds the adhesive nature of the arbitration agreement presents a small degree of procedural unconscionability, but Murray fails to show additional factors of oppression or surprise that would render the arbitration agreement highly procedurally unconscionable. In the employment context, "if an employee must sign a non-negotiable employment agreement as a condition of employment but there is no other indication of oppression or surprise, then the agreement will be enforceable unless the degree of substantive unconscionability is high." *Poublon*, 846 F.3d at 1261. The Court thus turns to consider whether Murray demonstrates a sufficiently high degree of substantive unconscionability to render the agreement unenforceable.

### b.    Substantive Unconscionability

Substantive unconscionability exists where terms are "overly harsh," "unduly oppressive," "unreasonably favorable," or "shock the conscience." *Poublon*, 846 F.3d at 1261 (citing *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 910-11 (2015)). "Not all one-sided contract provisions are unconscionable." *Sanchez*, 61 Cal. 4th at 911. Substantive unconscionability exists where terms are "unreasonably favorable to the more powerful party," not simply an "old-fashioned bad bargain." *Baltazar*, 62 Cal. 4th at 1244 (citation omitted). Said another way, a contract term is not substantively unconscionable when it merely gives one side a greater benefit; rather the term must be so one-sided as to shock the conscience. *Pinnacle Museum Tower Ass'n*, 55 Cal. 4th at 246. The Court takes up in turn Murray's arguments regarding the substantive unconscionability of the arbitration agreement.

### i.    FEHA's Administrative Framework

Murray argues that the arbitration agreement is substantively unconscionable because it does not allow him to pursue administrative claims under FEHA. Dkt. No. 31 at 15. Murray emphasizes that provisions having "the effect of dispensing with [the administrative] process before a statutory FEHA claim must be arbitrated" create substantive unconscionability. *Id.* at 15 (quoting *Baxter v. Genworth N. Am. Corp.*, 16 Cal. App. 5th 713, 734-35 (2017)).

But here, the arbitration agreement does not restrict Murray from pursuing any administrative claim, including a claim under FEHA. Instead, it provides in relevant part,

United States District Court
Northern District of California

> Arbitrable claims do not include, and this Agreement does not apply to or otherwise restrict, administrative claims you may bring before any government agency where, as a matter of law, the parties may not restrict your ability to file such claims (including discrimination and/or retaliation claims filed with the Equal Employment Opportunity Commission and unfair labor practice charges filed with the National Labor Relations Board). Otherwise, it is agreed that arbitration shall be the exclusive remedy for administrative claims.

Dkt. No. 25-1 at 4. The arbitration agreement thus explicitly states he is free to pursue any administrative claims, and Murray's contention that the arbitration agreement interferes with civil rights enforcement fails. Murray fails to establish substantive unconscionability on this basis.

### ii.    Mutuality

Under California law, mutuality generally requires only that the arbitration clause itself be bilateral. *See Armendariz*, 24 Cal. 4th at 117. Raising the spectre of a lack of mutuality, Murray asserts that "Tesla preserves a carve out for certain disputes whose underlying occurrences still spring from the employment relationship"; however, he cites no examples of carved-out disputes. Dkt. No. 31 at 16. The arbitration agreement instead states that Murray "and Tesla agree that any and all disputes, claims, or causes of action, in law or equity, arising from or relating to [Murray's] employment, or the termination of [Murray's] employment will be resolved, to the fullest extent permitted by law by final, binding and confidential arbitration[.]" Dkt. No. 25-1 at 3-4 (emphasis omitted). Murray fails to identify any portion of the arbitration agreement that permits Tesla to pursue claims in an alternative forum – Tesla and Murray are equally bound pursue claims relating to the employment relationship in arbitration. Therefore, the arbitration agreement does not fail as substantively unconscionable for lack of mutuality.

### iii.    Confidentiality

Murray also argues that the arbitration agreement is substantively unconscionable because it requires Murray to submit his claims to "confidential" arbitration. Dkt. No. 31 at 16-17. Where an agreement had "no commercial need for requiring employment-related proceedings to remain confidential," the California Court of Appeal found a confidentiality clause to be unconscionable because it "benefits only [the employer] with respect to harassment, retaliation, and discrimination claims." *Hasty v. Am. Auto. Assn. etc.*, 98 Cal. App. 5th 1041, 1062 (2023). Courts are skeptical

United States District Court
Northern District of California

of such provisions because they operate to prevent plaintiffs from gathering supporting evidence for their claims, inhibit plaintiffs from informally contacting witnesses outside of discovery, increase costs by requiring formal depositions, and discourage potential plaintiffs from filing discrimination cases. *Ramos v. Superior Ct.*, 28 Cal. App. 5th 1042, 1065-67 (2018).

Here, Tesla offers no commercial justification for the confidentiality provision. The confidentiality provision is thus unconscionable because it "hampers an employee's ability to prove a pattern of discrimination or to take advantage of findings in past arbitrations" in the absence of a commercial justification. *Ramos*, 28 Cal. App. 5th at 1066 (citation omitted). While it is not clear that the claims here require such a showing, the arbitration agreement would apply equally to such claims, and the unconscionability of an arbitration agreement is measured not by reference to the plaintiff's specific claims, but by looking to "general factors" present at the time of contract formation. *See Ramirez*, 16 Cal. 5th at 506. Accordingly, the confidentiality provision is substantively unconscionable.

### iv.    Single Plaintiff Requirement

Murray contends that the arbitration agreement's single-plaintiff requirement and class/representative waivers also establish the arbitration agreement as substantively unconscionable. Tesla requires claims to be brought solely in an "individual capacity," prohibiting class or representative mechanisms.[1] Dkt. No. 25-1 at 4. Murray primarily focuses on California Court of Appeal opinions that recognize class and collective waivers in arbitration agreements to be harsh and one-sided because they restrict only employee-initiated collective remedies, not any category of claims employers typically bring. Dkt. No. 31 at 17-18 (citing *Hasty*, 98 Cal. App. 5th at 1062-63; *Navas v. Fresh Venture Foods, LLC*, 85 Cal. App. 5th 626, 636 (2022)).

However, federal courts have found that the FAA displaces state law where state law might find unconscionable a class or collective action waiver in an arbitration agreement. In *Epic Systems Corp. v. Lewis*, the United States Supreme Court addressed whether employees are

---

[1] Though Murray contends that it also bars "private attorney general" proceedings, Dkt. No. 31 at 17, that language is not included within the agreement.

United States District Court
Northern District of California

United States District Court
Northern District of California

permitted to bring their claims in class or collective actions, regardless of their agreement with their employers, and held that a group of employees could not rely on a federal statute to void their agreement to arbitrate disputes with their employer through one-on-one arbitration. *Id.*, 584 U.S. 497, 502 (2018) ("In the [FAA], Congress has instructed federal courts to enforce arbitration agreements according to their terms – including terms providing for individualized proceedings."). There, the Court considered the applicability of the National Labor Relations Act and confirmed that it does not conflict with the FAA's command to enforce bilateral arbitration agreements. *Id.* at 510-16. The Court held that the FAA requires courts "to enforce, not override, the terms of the arbitration agreement" regardless of whether a countervailing rule arises under federal law or state law. *Id.* at 510; *see also Concepcion*, 563 U.S. at 341-45; *Perez Bautista v. Juul Labs, Inc.*, 478 F. Supp. 3d 865, 871 (N.D. Cal. 2020). Since then, the premise that state law can invalidate an arbitration agreement as unconscionable based on a class or collective action waiver has found little support in federal courts. *See Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1013 (9th Cir. 2023); *Reno v. W. Cab Co.*, No. 18-cv-00840-APG-NJK, 2020 WL 5606897, at *4 (D. Nev. Sep. 18, 2020) ("Consequently, under the FAA, class or collective action waivers in arbitration agreements are enforceable even if state law would find those provisions unconscionable or against state public policy."); *see also Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013). "As a result, class and collective action waivers are enforceable in arbitration agreements in employment actions and do not provide grounds to deny a motion to compel arbitration." *Connell v. ByteDance, Inc.*, No. 24-CV-07859-NC, 2025 WL 1828472, at *19 (N.D. Cal. July 1, 2025) (citing *Armstrong*, 59 F.4th at 1013; *Whitworth v. SolarCity Corp.*, 336 F. Supp. 3d 1119, 1127 (N.D. Cal. 2018); *Jasso v. Money Mart Express, Inc.*, 879 F. Supp. 2d 1038, 1048-49 (N.D. Cal. 2012)).

As noted above, the Court ordered the parties to submit supplemental briefing regarding the application of *Epic Systems Corp. v. Lewis* to the arbitration agreement in this case. *See* Dkt. Nos. 48, 51 (supplemental briefs dated February 20, 2025). Murray contends in his supplemental brief that his unconscionability argument centers on principles of contract formation rather than state law doctrines resisting arbitration, and he points to several California state court opinions

11

holding individual arbitration provisions unconscionable. Dkt. No. 51 at 3. However, Murray's contention that the arbitration agreement is rendered unenforceable simply "because it requires bilateral arbitration" is a state law defense "that impermissibly disfavors arbitration" and which must give way under the FAA. *Epic Sys. Corp.*, 584 U.S. at 509-10; *see also Concepcion*, 563 U.S. at 341-45. Therefore, the single plaintiff requirement in Murray's arbitration agreement with Tesla does not support a finding of substantive unconscionability here.

### v.    Ambiguity of JAMS Rules

Murray asserts that the arbitration agreement's reference to the JAMS rules is ambiguous because the JAMS rules are everchanging and that he had no way of knowing which rules would govern if and when he brought claims against Tesla. Dkt. No. 31 at 18. Tesla responds that Murray fails to identify any rule to which he objects. Dkt. No. 40 at 8.

The California Supreme Court has already addressed and disposed of a substantively identical argument. In *Baltazar v. Forever 21*, the court found that, where the plaintiff objected to reliance on an arbitration service's rules in the operative agreement yet did not identify an arbitration service rule that he believed was unconscionable, the employer's failure to provide the applicable arbitration rules did not deem the provision unconscionable. *See id.*, 62 Cal. 4th at 1246. Responding to the plaintiff's argument of substantive unconscionability based on terms "artfully hidden" in the arbitration service's rules, the state's high court pointed out that the plaintiff failed to identify an objectionable rule and held,

> Baltazar's argument accordingly might have force if her unconscionability challenge concerned some element of the AAA rules of which she had been unaware when she signed the arbitration agreement. But her challenge to the enforcement of the agreement has nothing to do with the AAA rules; her challenge concerns only matters that were clearly delineated in the agreement she signed.

*Baltazar*, 62 Cal. 4th at 1246.

Similarly, here, Murray does not identify a single JAMS rule to which he actually objects. Murray only vaguely contends that the instability of the JAMS rules gives rise to substantive unconscionability. Following *Baltazar*, the fact that Tesla did not identify each JAMS rule that

would be applicable to Murray's claims does not support a finding of substantive unconscionability.

\* \* \*

In sum, the Court finds no substantive unconscionability with respect to the arbitration agreement's implication for FEHA administrative claims, mutuality, and single-plaintiff provisions, but finds that the confidentiality provision is substantively unconscionable. The Court next considers whether the confidentiality provision is severable.

### c.      Severability

Having found that the arbitration agreement is both procedurally and substantively unconscionable, albeit to a limited degree, the Court contemplates whether the unconscionable portions of the Agreement can be severed and the remainder of the arbitration agreement enforced. If the court finds "the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." Cal. Civ. Code § 1670.5(a). The trial court has "some discretion as to whether to sever or restrict the unconscionable provision or whether to refuse to enforce the entire agreement." *Armendariz*, 24 Cal. 4th at 122. However, "the strong legislative and judicial preference is to sever the offending term and enforce the balance of the agreement." *Dotson v. Amgen, Inc.*, 181 Cal. App. 4th 975, 985-86 (2010).

When deciding whether to sever an unconscionable provision, the "dispositive question is whether 'the central purpose of the contract' is so tainted with illegality that there is no lawful object of the contract to enforce." *Poublon*, 846 F.3d at 1273 (citation omitted). In determining whether the entire agreement is tainted by the unconscionable provisions, courts consider two factors: (1) whether "the agreement contains more than one objectionable term" and (2) whether "there is no single provision a court can strike or restrict in order to remove the unconscionable taint from the agreement." *Id.* "Severance is not permitted if the court would be required to augment the contract with additional terms" or if the term was drafted in bad faith. *Lim*, 8 F.4th at 1005-06.

13

As discussed above, the Court finds the arbitration agreement raises only minimal concerns of procedural unconscionability as a contract of adhesion, and it raises minimal concerns of substantive unconscionability in its requirement to maintain confidentiality of the arbitration. The offending provision of the arbitration agreement, requiring confidentiality, does not "permeate" the offer letter or the arbitration provision, and it does not require reforming or re-writing the agreement. The unconscionable portion of the arbitration agreement may be remedied by severing the confidentiality requirement from the arbitration agreement, as provided by the contract's severance provision, without disrupting the arbitration agreement's primary objective of submitting Murray's claims to arbitration with JAMS before a neutral arbitrator. *See* Dkt. No. 25-1 at 4 ("If one or more of the provisions in this arbitration agreement . . . are deemed invalid, unenforceable, or void under . . . applicable law, then the remaining provisions, or portions thereof, shall not thereby be affected . . . and shall be given full effect"). Further, severing the provision would both conserve a legal contractual relationship between Murray and Tesla and prevent avoidance of the Arbitration Agreement entirely. *Ronderos*, 114 F.4th at 1100. Thus, the court concludes severing the confidentiality provision is appropriate.[2]

### 2.      Unenforceability as Against Public Policy

Murray argues that the arbitration argument is unenforceable because it contravenes California public policy as articulated in *McGill v. Citibank N.A.*, 2 Cal. 5th 945 (2017). *See* Dkt. No. 31 at 19-20. In *McGill*, the California Supreme Court held that arbitration provisions are invalid and unenforceable if they purport to waive a plaintiff's statutory right to seek public injunctive relief in all forums. *See* 2 Cal. 5th at 954-67. The plaintiff in that case brought claims under California consumer protection statutes and sought an injunction prohibiting the defendant from continuing to engage in its allegedly illegal and deceptive practices. *Id.* at 952. The defendant sought to compel arbitration, and the California Supreme Court held that the arbitration provision was unenforceable because it waived the plaintiff's right to seek public injunctive relief

---

[2] Severing the confidentiality requirement of the arbitration agreement does not interfere with JAMS Rule 26, which requires the arbitrator and the arbitration service (not necessarily the parties) to maintain confidentiality and protect sensitive information.

United States District Court
Northern District of California

under these statutes regardless of the forum. *Id.* at 954. The Ninth Circuit has since interpreted California case law to establish that if a contract allows plaintiffs to seek public injunctive relief through arbitration it does not violate the *McGill* rule and is enforceable. *See DiCarlo v. MoneyLion, Inc.*, 988 F.3d 1148, 1158 (9th Cir. 2021) (enforcing an arbitration agreement where public injunctive relief was sought for UCL, FAL, and CLRA claims).

Here, the offer letter provides in part, "Nothing in this agreement is intended to prevent either you or Tesla from obtaining injunctive relief in court to prevent irreparable harm pending the conclusion of any such arbitration." Dkt. No. 25-1 at 4. Murray does not explain how the arbitration agreement at issue here waives his right to pursue public injunctive relief and the Court sees no indication that it does. Murray overstates the breadth of *McGill*, and his circuitous argument that the arbitration agreement impedes enforcement of his rights under FEHA finds no basis in the *McGill* decision. *See* Dkt. No. 31 at 20-21. Because the arbitration agreement at issue does not "purport to waive [a party's] right to request in any forum . . . public injunctive relief," the rule under *McGill* is not implicated. *McGill*, 2 Cal. 5th at 961. The Court therefore rejects Murray's argument that the arbitration agreement is unenforceable on this basis.

### C.     Motion to Stay

Tesla moves to stay these proceedings pending arbitration. "When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024). Tesla's motion to stay is therefore GRANTED.

## III.     CONCLUSION

For the foregoing reasons, the Court **GRANTS** Tesla's motion to compel and motion to stay. The parties **SHALL FILE** a joint status report on June 1, 2026, and every 90 days thereafter, to inform the Court of the status of the arbitration proceedings.

**IT IS SO ORDERED.**

Dated: February 23, 2026

**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**

15